IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

GERALD PALMER, JR.                    )
                                      )
            PLAINTIFF,                )        Case No.
                                      )
v.                                    )        Hon.
                                      )
SCRIPPS MEDIA, INC.                   )
            DEFENDANT.                )

---

*Plaintiff asserts there is no other civil action pending in this Honorable Court or any other Court arising out of the same transaction and occurrence.*

## PLAINTIFF'S COMPLAINT

For his Complaint against Defendant, Plaintiff Gerald Palmer, Jr. ("Mr. Palmer"), states as follows:

## JURY DEMAND

COMES NOW Plaintiff Gerald Palmer, Jr. and hereby demands trial by jury.

## PARTIES AND JURISDICTION

1.     At all times relevant to this Complaint, Plaintiff Gerald Palmer, Jr. was a resident of Michigan.

2.     Defendant Scripps Media, Inc. is a for-profit corporation with a principal address of 312 Walnut Street Suite 2800 Cincinnati, OH 45202 and a registered agent address of 3410 Belle Chase Way Suite 600, Lansing, MI 48911.

3.      Venue is proper in this Court, because the violations of Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq. giving rise to Plaintiff's claims occurred in this district.

4.      This action is brought in this Court on the basis of federal question jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq.

5.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

## FACTUAL ALLEGATIONS

6.      Mr. Palmer is a Black male with a disability who was employed by Defendant as a Stage Manager for the subsidiary WXYZ Channel 7 ABC News Detroit.

7.      Mr. Palmer began his employment on November 17, 2021 at a rate of $13.00 an hour after receiving an offer letter from Pauline J. Retty.

8.      Shortly after agreeing to his start date, Donn Bousquet (operations manager), reached out to Mr. Palmer to attempt to get him to start early.

9.      Upon information and belief, Mr. Palmer felt pressured to start early and eventually agreed.

10.     Mr. Palmer was thrown into an orientation with little guidance and began to experience numerous difficult to troubleshoot technical difficulties.

11.     Mr. Palmer consulted with other production assistants and learned it was normal to have these issues at this particular station.

12.     Further, Mr. Palmer was told that Bousquet would base production performance on the ability to solve these issues, regardless of whether the issue originated from production.

13.     Mr. Palmer requested to speak with Bousquet privately, in or around December of 2021 to discuss the training process.

14.     Mr. Palmer was shocked by Bousquet's questions and assertions that Mr. Palmer should be ready to go solo on live productions after such a short training period.

15.     Mr. Palmer and Bousquet had several more meetings, with Bousquet becoming more demanding of Mr. Palmer's development.

16.     Bousquet pressured Mr. Palmer by claiming his need for assistance and training was costing the company money.

17.     In January of 2022, Mr. Palmer began to receive signs of harassment, discrimination, and hostility towards him as an openly Black, gay male with a disability.

18.     Comments would be made about his clothing such as scarves or pride attire.

19.     One day, he came into the office to find his name torn from his locker.

20.   Due to the forced quick training period, Mr. Palmer encountered technical issues he had not been trained to fix.

21.   This led to constant criticism by his supervisors and co-workers who would yell at or openly berate Mr. Palmer.

22.   In February of 2022, Mr. Palmer discovered health symptoms that were affecting his ability to sit for long periods at the teleprompter desk.

23.   Mr. Palmer went to his doctor several times to treat these symptoms and was recommended to attend physical therapy.

24.   Mr. Palmer met with Bousquet around this time and reported the treatment he had received, the technical issues, the lack of training, and his health issues.

25.   Bousquet dismissed this concerns labeling Mr. Palmer as "unfocused."

26.   On or about March 14, 2022, Mr. Palmer was disciplined by Bousquet for performance issues, despite Mr. Palmer reiterating his health concerns.

27.   Mr. Palmer also mentioned his comprehension disability that seemed to cause communication issues between himself and some of the directors.

28.   Bousquet disregarded all of this information and wrote up Mr. Palmer.

29.   Mr. Palmer checked himself in to the ER of Ascension Providence Rochester on March 30, 2022, to be treated for his health symptoms.

30.    In May of 2022, on of Defendant's own employees Dr. Partha Nandi, M.D. (gastroenterologist) discussed Mr. Palmer's health concerns with Mr. Palmer.

31.    Mr. Palmer ended up undergoing a colonoscopy and endoscopy at Tory Beaumont Hospital on May 11, 2022 after speaking with Dr. Nandi.

32.    Dr. Nandi even ordered CT Scans for Mr. Palmer based upon the Ascension Providence Rochester report.

33.    The procedure succeeded in reducing Mr. Palmer's symptoms and medication was issued to further assistant him with symptom management.

34.    Shortly after this, Mr. Palmer had his stage radio removed, which allowed him to communicate to the master control room.

35.    This forced Mr. Palmer to use his phone to communicate to the master control room, which caused other employees and supervisors to admonish Mr. Palmer for using his radio.

36.    During Pride month in 2022, Mr. Palmer painted his nails, which caused team members to admonish and harass him.

37.    These incidents led to a second write-up in June of 2022, as Bousquet said Mr. Palmer had additional complaints about his performance.

38.    The write-up was based upon the use of Mr. Palmer's phone to solve the radio issue and his painted nails causing a commotion among the staff.

5

39.     Mr. Palmer again brought up the health concerns, and the treatment and comments he received, to Bousquet, who ignored them entirely.

40.     Suddenly, in August of 2022, Bousquet changed Mr. Palmer's schedule without warning or checking if the new schedule conflicted with Mr. Palmer's prior commitments.

41.     Eventually, the tension diminished and Plaintiff received a promotion to stage manager in or around October of 2022.

42.     Mr. Palmer met with Bousquet who admitted that Mr. Palmer was showing improvement in the role.

43.     In December of 2022, an emergency weather report caused issues with a live show.

44.     These issues were blamed on Mr. Palmer, despite them not being within his control.

45.     Mr. Palmer was also blamed for a letter sent to another employee.

46.     However, Mr. Palmer had nothing to do with the letter.

47.     Mr. Palmer went on vacation from December 24, 2022 to January 1, 2023.

48.     On January 3, 2023 Mr. Palmer was running late and called the director, who informed him that coverage was fine until he was able to get to work.

49.     Despite this, Mr. Palmer was suspended by Bousquet and Pauline due to this issue, other job complaint issues, and alleged timecard accuracy.

50.     The investigation and suspension lasted until March of 2023.

51.     During the investigation period, Mr. Palmer received numerous harassing and/or intimidating emails from Katie Ford, Defendant's agent.

52.     The investigation led to no action by Defendant and Mr. Palmer learned that people such as Glenda Lewis were never interviewed by Ms. Ford who was overseeing the investigation.

53.     Glenda Lewis even mentioned that she informed Bousquet about another stage manager, Shelby Rabideaux's, poor performance, which Bousquet ignored.

54.     Bousquet even told Ms. Lewis that Ms. Rabideaux should be given more time to learn.

55.     Mr. Palmer was terminated on March 21, 2023, by Bousquet, with input from Casey Graver and Katie Ford.

56.     The termination has caused him to be black-balled from the news industry.

57.     Plaintiff filed his charge with the EEOC, Charge No. 471-2024-00697, and was issued a Right to Sue letter on June 11, 2024, and this lawsuit follows.

## COUNT I
## RETALIATION IN VIOLATION OF 42 USC § 1981

57.  Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as if fully set forth herein.

58.  42 USC § 1981 prohibits individuals from intentionally discriminating and retaliating against persons who engage in protected activity, including reporting and opposing unlawful acts of race discrimination, in the making and enforcement of contracts.

59.  Defendant's discrimination against Plaintiff as described above is in violation of the rights of Plaintiff afforded him by the First Amendment and the Civil Rights Act of 1866, 42 USC § 1981, as amended by the Civil Rights Act of 1991.

60.  By the conduct described above, Defendant intentionally deprived Plaintiff of the same rights as are enjoyed by individuals who do not report discrimination, and those who are non-African American, to the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendant, in violation of 42 USC § 1981.

61.  Plaintiff engaged in activity protected by 42 USC § 1981 when he complained of and opposed unlawful racial discrimination.

62.  The retaliation by Defendant that Plaintiff experienced included his termination, which broke the contract between the parties.

8

63.    The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

64.    As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

65.    But for Defendant's unlawful discrimination against Plaintiff for opposing racial discrimination, Plaintiff would not have suffered damages as set forth herein including his termination.

66.    As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about their future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

## COUNT II
## RACIAL DISCRIMINATION IN VIOLATION OF 42 USC § 1981

67.    Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as if fully set forth herein.

68.    42 USC § 1981 prohibits employers from intentionally discriminating against individuals, including employees, in the making and enforcement of contracts.

69.    Defendant's discrimination against Plaintiff as described above is in violation of the rights of Plaintiff afforded him by the U.S. Constitution and the Civil Rights Act of 1866, 42 USC § 1981, as amended by the Civil Rights Act of 1991.

70.    By the conduct described above, Defendant intentionally deprived Plaintiff of the same rights as are enjoyed by individuals who are non-African American, to the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendant, in violation of 42 USC § 1981.

71.    The intentional discrimination on the basis of Plaintiff's race by Defendant that Plaintiff experienced included his termination, which broke the contract between the parties.

72.    The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

73.    As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

74.    As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about their future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

## COUNT III
## HARRASMENT & DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e et seq. ("Title VII")

75.    Plaintiff incorporates by reference all allegations in the preceding paragraphs.

76.    At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

77.    Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to harass or discriminate an employee on the basis of that employee's skin color.

78.    A respondeat superior relationship existed because Defendant and its agents had the ability to undertake or recommend tangible decisions affecting

11

Plaintiff and the authority to direct Plaintiff's daily work activity, as alleged in the statement of facts.

79.    Moreover, a respondeat superior relationship existed because Defendant and its agents had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct Plaintiff's daily work activities, as alleged in the statement of facts.

80.    Plaintiff is an African-American man, and, as a result, is a member of a protected class pursuant to Title VII.

81.    Plaintiff was subjected to offensive communication and/or conduct on the basis of his membership in this protected class, as set forth in the facts section above, including but not limited to treating him differently and holding him to a different standard than those who were not African-American, and other such facts as set forth in this complaint, culminating in his termination.

82.    Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

83.    Plaintiff notified Defendant, through its agents, of the unwelcomed conduct and communication and Defendant failed to remedy the unwelcomed conduct or communication, including but not limited to subjecting him to worse treatment than his colleagues, on the basis of his race.

84.     The unwelcomed conduct or communication was intended to or in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, or offensive work environment, as alleged in the statement of facts.

85.     As a proximate result of the Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

## COUNT IV
## DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 et seq. ("ELCRA")

86.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

87.     At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, ELCRA.

88.     Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to harass or discriminate against an employee on the basis of that employee's race or skin color.

89.     Plaintiff is an African American man, and, as a result, is a member of a protected class pursuant to ELCRA.

90.     Plaintiff was subjected to offensive communication and/or conduct on the basis of his membership in this protected class.

13

91.     Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

92.     The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

93.     As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and have suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

94.     Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT V
## RETALIATION IN VIOLATION OF TITLE VII

95.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

96. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

97. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

98. Defendant's conduct, as alleged herein, violated Title VII which makes it unlawful to harass or retaliate against an employee for engaging in protected activity.

99. Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including, but not limited to when Plaintiff mentioned the differential, harassment, and hostile treatment he received.

100. Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because he reported the issue directly to multiple agents of Defendant.

101. After Plaintiff engaged in protected activity, Defendant's agents thereafter took adverse employment actions against Plaintiff, as alleged in the statement of facts, and terminated him from his position.

102. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

103. Plaintiff notified Defendant and its agents of the unwelcomed conduct and communication; however, Defendant failed to remedy the same.

104. As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

105.   As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

106.   Plaintiff requests relief as described in the Prayer for Relief below.

<u>COUNT VI</u>
**RETALIATION IN VIOLATION OF THE ELCRA**

107.   Plaintiff incorporates by reference all allegations in the preceding paragraphs.

108.   At all material times, Plaintiff was an employee, and Defendant was his employer covered by, and within the meaning of, the ELCRA.

109.   A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

110.   Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to retaliate against an employee who has engaged in protected activity.

111.   Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including but not limited to when Plaintiff reported the differential treatment he received.

112.   Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because he reported the issue directly to multiple agents of Defendant.

16

113.     After Plaintiff engaged in protected activity, Defendant's agents thereafter took adverse employment actions against Plaintiff, as alleged in the statement of facts, which included terminating him.

114.     Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

115.     Plaintiff notified Defendant and its agents of the unwelcomed conduct and communication; however, Defendant failed to remedy the same.

116.     As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

117.     As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

118.     Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VII

**DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF TITLE I OF THE AMERICANS WITH DISABILITIES ACT OF 1990 42 U.S.C. § 12101, et seq. ("ADA")**

119.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

120.     At all material times, Plaintiff was an employee, and Defendant was Plaintiff's employer, covered by and within the meaning of the ADA.

17

121.   A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

122.   Plaintiff informed defendant of stomach issues and his comprehension disability meaning, Plaintiff has a disability within the meaning of the ADA.

123.   Plaintiff's disabilities  under the ADA  are qualified, meaning that, with reasonable accommodation, he can perform the essential functions and duties of his job.

124.   Section 12112(a) of the ADA, makes it illegal to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

125.   Plaintiff was discriminated against on the basis of his disability when Defendant treated him differently based upon his disability and treatment related to that disability.

126.   Defendant's unlawful employment practices were done intentionally, with  malice, or with reckless indifference to Plaintiff's rights.

127.   But for Defendant's illegal discrimination, Plaintiff would not have been damaged nor discharged.

18

128.   As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

129.   As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

130.   Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VIII

### DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITY ACT, MCL 37.1201, et seq. ("PWDCRA")

131.   Plaintiff incorporates by reference all allegations in the preceding paragraphs.

132.   At all material times, Plaintiff was an employee, and Defendant was Plaintiff's employer, covered by and within the meaning of the PWDCRA.

133.   A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

134.   Plaintiff has a disability within the meaning of the PWDCRA.

135.   Plaintiff's disability is qualified, meaning that, with reasonable accommodation, he can perform the essential functions and duties of his job.

136.    MCL 37.1202(b) makes it illegal to, "[d]ischarge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability … that is unrelated to the individual's ability to perform the duties of a particular job or position."

137.    Plaintiff was discriminated against on the basis of his disability when Defendant treated hm differently based upon his disability and treatment related to that disability.

138.    Defendant's unlawful employment practices were done intentionally, with malice, or with reckless indifference to Plaintiff's rights.

139.    But for Defendant's illegal discrimination Plaintiff would not have been damaged.

140.    As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

<u>COUNT IX</u>
**DISCRIMINATION ON THE BASIS OF SEXUAL ORIENTATION IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 et seq. ("ELCRA")**

141.    Plaintiff incorporates by reference all allegations in the preceding paragraphs.

142.    At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, ELCRA.

20

143.   Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to harass or discriminate against an employee on the basis of that employee's sexual orientation.

144.   Plaintiff is an openly gay man, and, as a result, is a member of a protected class pursuant to ELCRA, which Defendant knew because he informed Defendant's agents of the same.

145.   Plaintiff was subjected to offensive communication and/or conduct on the basis of his membership in this protected class.

146.   Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

147.   The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

148.   As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and have suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

149.   Plaintiff requests relief as described in the Prayer for Relief below.

## **RELIEF REQUESTED**

PLAINTIFF, Gerald Palmer, respectfully requests that this Honorable Court enter judgment against Defendant as follows:

1. Compensatory damages in whatever amount to which Plaintiff is entitled;

2. Exemplary damages in whatever amount which Plaintiff is entitled;

3. An award of lost wages and the value of fringe benefits, past and future;

4. An award of interest, costs, and reasonable attorney fees; and

5. An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated: September 9, 2024

Dated: September 9, 2024                    Respectfully Submitted,

                                        CARLA D. AIKENS, P.L.C.

                                        /s/ *Carla D. Aikens*
                                        Carla D. Aikens (P69530)
                                        Austen J. Shearouse (P84539)
                                        615 Griswold St., Ste. 709
                                        Detroit, MI 48226
                                        carla@aikenslawfirm.com
                                        austen@aikenslawfirm.com
                                        *Attorneys for Plaintiff*