UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD PALMER, JR.,

    Plaintiff,

v.

SCRIPPS MEDIA, INC.,

    Defendant.

Case No. 24-cv-12353

Hon. Brandy R. McMillion

Magistrate Judge David R. Grand

_____

## ANSWER AND AFFIRMATIVE DEFENSES

Defendant Scripps Media, Inc., ("Scripps") through its undersigned counsel, answers Plaintiff's Complaint as follows:

## PARTIES AND JURISDICTION

1.    At all times relevant to this Complaint, Plaintiff Gerald Palmer, Jr. was a resident of Michigan.

**Answer:** Scripps lacks knowledge or information sufficient to form a belief about the truth of this allegation, and on that basis denies.

2.    Defendant Scripps Media, Inc. is a for-profit corporation with a principal address of 312 Walnut Street Suite 2800 Cincinnati, OH 45202 and a registered agent address of 3410 Belle Chase Way Suite 600, Lansing, MI 48911.

**Answer:** Admitted.

3.      Venue is proper in this Court, because the violations of Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq. giving rise to Plaintiff's claims occurred in this district.

**Answer:** Scripps does not contest venue.

4. This action is brought in this Court on the basis of federal question jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq.

**Answer:** Admitted only that Title VII claims arise under federal question jurisdiction. Denied to the extent this paragraph suggests that Plaintiff has valid claims.

5.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

**Answer:** Admitted only that the non-federal claims, as pled, would fall under the Court's supplemental jurisdiction. Denied to the extent this paragraph suggests that Plaintiff has valid claims.

## **FACTUAL ALLEGATIONS**

6.     Mr. Palmer is a Black male with a disability who was employed by Defendant as a Stage Manager for the subsidiary WXYZ Channel 7 ABC News Detroit.

**Answer:** Admitted that Plaintiff identifies as a Black male and that he was employed by WXYZ. Otherwise, Scripps lacks knowledge or information sufficient to form a belief about the truth of this allegation, and on that basis denies.

7.     Mr. Palmer began his employment on November 17, 2021 at a rate of $13 .00 an hour after receiving an offer letter from Pauline J. Retty.

**Answer:** Denied that Palmer's employment started November 17, 2021. Otherwise admitted.

8. Shortly after agreeing to his start date, Donn Bousquet (operations manager), reached out to Mr. Palmer to attempt to get him to start early.

**Answer:** Denied.

9. Upon information and belief, Mr. Palmer felt pressured to start early and eventually agreed.

**Answer:** Denied.

10. Mr. Palmer was thrown into an orientation with little guidance and began to experience numerous difficult to troubleshoot technical difficulties.

**Answer:** Denied.

11.    Mr. Palmer consulted with other production assistants and learned it was normal to have these issues at this particular station.

**Answer:** Denied that Palmer's issues were "normal" at the station. Otherwise, Scripps lacks knowledge or information sufficient to form a belief about the truth of an allegation, and on this basis denies.

12. Further, Mr. Palmer was told that Bousquet would base production performance on the ability to solve these issues, regardless of whether the issue originated from production.

**Answer:** Scripps lacks knowledge or information sufficient to form a belief about the truth of the allegations about what Palmer was "told" by an unidentified person, and on this basis denies.

13.    Mr. Palmer requested to speak with Bousquet privately, in or around December of 2021 to discuss the training process.

**Answer:** Admitted only that Bosquet had discussions with Palmer regarding training. Otherwise denied.

14. Mr. Palmer was shocked by Bousquet's questions and assertions that Mr. Palmer should be ready to go solo on live productions after such a short training period.

**Answer:** Admitted only that new production assistants are generally able to adequately perform their duties two weeks after their start date. Otherwise, Scripps lacks knowledge or information sufficient to form a belief about the truth of the allegations, and on this basis denies.

15. Mr. Palmer and Bousquet had several more meetings, with Bousquet becoming more demanding of Mr. Palmer's development.

**Answer:** Admitted only that Palmer and Bousquet had several more meetings regarding Plaintiff's performance issues. Otherwise denied.

16. Bousquet pressured Mr. Palmer by claiming his need for assistance and training was costing the company money.

**Answer:** Denied.

17.     In January of 2022, Mr. Palmer began to receive signs of harassment, discrimination, and hostility towards him as an openly Black, gay male with a disability.

**Answer:** Denied.

18. Comments would be made about his clothing such as scarves or pride attire.

**Answer:** Denied.

19.     One day, he came into the office to find his name torn from his locker.

**Answer:** Denied.

20.     Due to the forced quick training period, Mr. Palmer encountered technical issues he had not been trained to fix.

**Answer:** Denied.

21.     This led to constant criticism by his supervisors and co-workers who would yell at or openly berate Mr. Palmer.

**Answer:** Denied.

22.     In February of 2022, Mr. Palmer discovered health symptoms that were affecting his ability to sit for long periods at the teleprompter desk.

**Answer:** Scripps lacks knowledge or information sufficient to form a belief about the truth of the allegations, and on this basis denies.

23.     Mr. Palmer went to his doctor several times to treat these symptoms and was recommended to attend physical therapy.

**Answer:** Scripps lacks knowledge or information sufficient to form a belief about the truth of the allegations, and on this basis denies.

24.     Mr. Palmer met with Bousquet around this time and reported the treatment he had received, the technical issues, the lack of training, and his health issues.

**Answer:** Admitted only that Bousquet met with Palmer in February 2022 regarding Palmer's performance issues. Otherwise denied, including specifically denied that Palmer reported an alleged disability or purported discrimination.

25.     Bousquet dismissed this concerns labeling Mr. Palmer as "unfocused."

**Answer:** Denied.

26. On or about March 14, 2022, Mr. Palmer was disciplined by Bousquet for performance issues, despite Mr. Palmer reiterating his health concerns.

**Answer:** Admitted only that Palmer was coached regarding performance issues in March 2022. Otherwise denied.

27. Mr. Palmer also mentioned his comprehension disability that seemed to cause communication issues between himself and some of the directors.

**Answer:** Denied.

28.    Bousquet disregarded all of this information and wrote up Mr. Palmer.

**Answer:** Denied.

29.    Mr. Palmer checked himself in to the ER of Ascension Providence Rochester on March 30, 2022, to be treated for his health symptoms.

**Answer:** Scripps lacks knowledge or information sufficient to form a belief about the truth of the allegations, and on this basis denies.

30.    In May of 2022, one of Defendant's own employees Dr. Partha Nandi, M.D. (gastroenterologist) discussed Mr. Palmer's health concerns with Mr. Palmer.

**Answer:** Scripps lacks knowledge or information sufficient to form a belief about the truth of the allegations, and on this basis denies.

31.    Mr. Palmer ended up undergoing a colonoscopy and endoscopy at Tory Beaumont Hospital on May 11, 2022 after speaking with Dr. Nandi.

**Answer:** Scripps lacks knowledge or information sufficient to form a belief about the truth of the allegations, and on this basis denies.

32.    Dr. Nandi even ordered CT Scans for Mr. Palmer based upon the Ascension Providence Rochester report.

**Answer:** Scripps lacks knowledge or information sufficient to form a belief about the truth of the allegations, and on this basis denies.

33.    The procedure succeeded in reducing Mr. Palmer's symptoms and medication was issued to further assistant him with symptom management.

**Answer:** Scripps lacks knowledge or information sufficient to form a belief about the truth of the allegations, and on this basis denies.

34.    Shortly after this, Mr. Palmer had his stage radio removed, which allowed him to communicate to the master control room.

**Answer:** Denied.

35.     This forced Mr. Palmer to use his phone to communicate to the master control room, which caused other employees and supervisors to admonish Mr. Palmer for using his radio.

**Answer:** Admitted that Mr. Bosquet and other employees witnessed Mr. Palmer using his cell phone to watch videos and other things on his phone that were not work-related, and that Plaintiff was told that he needed to avoid using his cell phone for non-work reasons. Otherwise denied.

36.     During Pride month in 2022, Mr. Palmer painted his nails, which caused team members to admonish and harass him.

**Answer:** Scripps lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding Plaintiff's nails, and on this basis denies. Denied that Plaintiff was admonished or harassed due to his nails being painted.

37.     These incidents led to a second write-up in June of 2022, as Bousquet said Mr. Palmer had additional complaints about his performance.

**Answer:** Admitted that there was a final written warning issued in June 2022 for Plaintiff's ongoing performance issues and Plaintiff's inappropriate cell phone use at work. Otherwise denied.

38.     The write-up was based upon the use of Mr. Palmer's phone to solve the radio issue and his painted nails causing a commotion among the staff.

**Answer:** Denied.

39.     Mr. Palmer again brought up the health concerns, and the treatment and comments he received, to Bousquet, who ignored them entirely.

**Answer:** Denied.

40.     Suddenly, in August of 2022, Bousquet changed Mr. Palmer's schedule without warning or checking if the new schedule conflicted with Mr. Palmer's prior commitments.

**Answer:** Admitted only that a new generic schedule for all Production Assistants was generated in August 2022 when a new Production Assistant was hired, consistent with ordinary protocol, which does not result in actual schedule changes for existing employees absent advance notice and employee feedback. Otherwise denied.

41.     Eventually, the tension diminished and Plaintiff received a promotion to stage manager in or around October of 2022.

**Answer:** Denied.

42.     Mr. Palmer met with Bousquet who admitted that Mr. Palmer was showing improvement in the role.

**Answer:** Admitted only that there seemed to be some improvement in the first few months after the June 2022 warning, but that issues began to reemerge. Otherwise denied.

43.     In December of 2022, an emergency weather report caused issues with a live show.

**Answer:** Denied.

44.     These issues were blamed on Mr. Palmer, despite them not being within his control.

**Answer:** Denied.

45.     Mr. Palmer was also blamed for a letter sent to another employee.

**Answer:** Denied.

46.     However, Mr. Palmer had nothing to do with the letter.

**<u>Answer</u>:** Denied insofar as this claims that Bousquet "blamed" something on Palmer regarding this letter; otherwise, Scripps lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the "letter" Palmer is referring to, and on this basis denies.

47.     Mr. Palmer went on vacation from December 24, 2022 to January 1, 2023.

**<u>Answer</u>:** Admitted only that Palmer used PTO or "banked" holiday days, rather than work, during the dates indicated. Otherwise, Scripps lacks knowledge or information sufficient to form a belief about the truth of the allegations, and on this basis denies.

48.     On January 3, 2023 Mr. Palmer was running late and called the director, who informed him that coverage was fine until he was able to get to work.

**<u>Answer</u>:** Admitted that on January 3, 2023, Plaintiff was over 2 hours late and did not give notice. Otherwise denied.

49.     Despite this, Mr. Palmer was suspended by Bousquet and Pauline due to this issue, other job complaint issues, and alleged timecard accuracy.

**Answer:** Admitted that Plaintiff was placed on suspension because he was already on a final written warning, and he had been late at least 9 times. Otherwise denied.

50.     The investigation and suspension lasted until March of 2023.

**Answer:** Admitted that the investigation and suspension lasted until March of 2023, in large part due to Plaintiff's failure to fully cooperate in the investigation including refusing to meet with the investigator when requested.

51.     During the investigation period, Mr. Palmer received numerous harassing and/or intimidating emails from Katie Ford, Defendant's agent.

**Answer:** Denied.

52.     The investigation led to no action by Defendant and Mr. Palmer learned that people such as Glenda Lewis were never interviewed by Ms. Ford who was overseeing the investigation.

**Answer:** Admitted that Ms. Lewis was not interviewed (and that Plaintiff did not raise the allegations discussed in Paragraphs 53 and 54 below regarding Ms. Lewis during the investigation). Further admitted that a thorough investigation found

that Plaintiff's allegations of discrimination, harassment, and retaliation were unfounded. Otherwise denied.

53.    Glenda Lewis even mentioned that she informed Bousquet about another stage manager, Shelby Rabideaux's, poor performance, which Bousquet ignored.

**Answer:** Denied.

54.    Bousquet even told Ms. Lewis that Ms. Rabideaux should be given more time to learn.

**Answer:** Denied.

55.    Mr. Palmer was terminated on March 21, 2023, by Bousquet, with input from Casey Graver and Katie Ford.

**Answer:** Admitted that Mr. Bousquet terminated Palmer on March 21, 2023. Otherwise denied.

56.    The termination has caused him to be black-balled from the news industry.

**Answer:** Denied.

57.     Plaintiff filed his charge with the EEOC, Charge No. 471-2024-00697, and was issued a Right to Sue letter on June 11, 2024, and this lawsuit follows.

**Answer:** Admitted.

## COUNT I
## [ALLEGED] RETALIATION IN VIOLATION OF 42 USC § 1981

57. [*sic.*]     Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as if fully set forth herein.

**Answer:** Defendant incorporates by reference its answers to Paragraphs 1 through 57 of Plaintiff's Complaint as though fully set forth herein.

58.     42 USC § 1981 prohibits individuals from intentionally discriminating and retaliating against persons who engage in protected activity, including reporting and opposing unlawful acts of race discrimination, in the making and enforcement of contracts.

**Answer:** Admitted only that 42 U.S.C. § 1981 has been interpreted to contain certain prohibitions against retaliation; denied otherwise, including that Plaintiff accurately or fairly summarizes the statute's terms and relevant case law, and the implication that any violation of the statute occurred in this case.

16

59. Defendant's discrimination against Plaintiff as described above is in violation of the rights of Plaintiff afforded him by the First Amendment and the Civil Rights Act of 1866, 42 USC § 1981, as amended by the Civil Rights Act of 1991.

**Answer:** Denied.

60.    By the conduct described above, Defendant intentionally deprived Plaintiff of the same rights as are enjoyed by individuals who do not report discrimination, and those who are non-African American, to the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendant, in violation of 42 USC § 1981.

**Answer:** Denied.

61.    Plaintiff engaged in activity protected by 42 USC § 1981 when he complained of and opposed unlawful racial discrimination.

**Answer:** Denied.

62.    The retaliation by Defendant that Plaintiff experienced included his termination, which broke the contract between the parties.

**Answer:** Denied.

63.    The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

**Answer:** Denied.

64.    As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

**Answer:** Denied.

65. But for Defendant's unlawful discrimination against Plaintiff for opposing racial discrimination, Plaintiff would not have suffered damages as set forth herein including his termination.

**Answer:** Denied.

66. As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about their future, physical and

emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

**Answer:** Denied.


# COUNT II
## [ALLEGED] RACIAL DISCRIMINATION IN VIOLATION
## OF 42 USC § 1981

67.     Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as if fully set forth herein.

**Answer:** Defendant incorporates by reference its answers to Paragraphs 1 through 66 of Plaintiff's Complaint as though fully set forth herein.


68.     42 USC § 1981 prohibits employers from intentionally discriminating against individuals, including employees, in the making and enforcement of contracts.

**Answer:** Admitted only that 42 U.S.C. § 1981 contains certain prohibitions against discrimination; denied otherwise, including that Plaintiff accurately or fairly summarizes the statute's terms and relevant case law, and the implication that any violation of the statute occurred in this case.

69.     Defendant's discrimination against Plaintiff as described above is in violation of the rights of Plaintiff afforded him by the U.S. Constitution and the Civil Rights Act of 1866, 42 USC § 1981, as amended by the Civil Rights Act of 1991.

**Answer:** Denied.

70.     By the conduct described above, Defendant intentionally deprived Plaintiff of the same rights as are enjoyed by individuals who are non-African American, to the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendant, in violation of 42 USC § 1981.

**Answer:** Denied.

71. The intentional discrimination on the basis of Plaintiff's race by Defendant that Plaintiff experienced included his termination, which broke the contract between the parties.

**Answer:** Denied.

72. The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

**Answer:** Denied.

73.     As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

**Answer:** Denied.

74. As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about their future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

**Answer:** Denied.

## COUNT III
## [ALLEGED] HARRASMENT & DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e et seq. ("Title VII")

75. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

**Answer:** Defendant incorporates by reference its answers to Paragraphs 1 through 74 of Plaintiff's Complaint as though fully set forth herein.

76. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

**Answer:** Admitted that Defendant employed Plaintiff from late 2021 to early 2023. Otherwise, Scripps lacks knowledge or information sufficient to form a belief about the truth of this allegation, and on that basis denies.

77.    Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to harass or discriminate an employee on the basis of that employee's skin color.

**Answer:** Denied.

78.    A respondeat superior relationship existed because Defendant and its agents had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct Plaintiff's daily work activity, as alleged in the statement of facts.

**Answer:** Denied.

79. Moreover, a respondeat superior relationship existed because Defendant and its agents had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct Plaintiff's daily work activities, as alleged in the statement of facts.

**Answer:** Denied.

80.    Plaintiff is an African-American man, and, as a result, is a member of a protected class pursuant to Title VII.

**Answer:** Admitted that African-American men may bring claims under Title VII; otherwise denied, including any inference that Title VII was violated here.

81.    Plaintiff was subjected to offensive communication and/or conduct on the basis of his membership in this protected class, as set forth in the facts section above, including but not limited to treating him differently and holding him to a different standard than those who were not African-American, and other such facts as set forth in this complaint, culminating in his termination.

**Answer:** Denied.

82.    Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

**Answer:** Denied.

83.     Plaintiff notified Defendant, through its agents, of the unwelcomed conduct and communication and Defendant failed to remedy the unwelcomed conduct or communication, including but not limited to subjecting him to worse treatment than his colleagues, on the basis of his race.

**Answer:** Denied.

84.     The unwelcomed conduct or communication was intended to or in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, or offensive work environment, as alleged in the statement of facts.

**Answer:** Denied.

85. As a proximate result of the Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

**Answer:** Denied.

## COUNT IV
## [ALLEGED] DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 et seq. ("ELCRA")

86.    Plaintiff incorporates by reference all allegations in the preceding paragraphs.

**Answer:** Defendant incorporates by reference its answers to Paragraphs 1 through 85 of Plaintiff's Complaint as though fully set forth herein.


87.    At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, ELCRA.

**Answer:** Admitted that Defendant employed Plaintiff from late 2021 to early 2023. Otherwise, Scripps lacks knowledge or information sufficient to form a belief about the truth of this allegation, and on that basis denies.


88. Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to harass or discriminate against an employee on the basis of that employee's race or skin color.

**Answer:** Denied.


89.    Plaintiff is an African American man, and, as a result, is a member of a protected class pursuant to ELCRA.

**Answer:** Admitted that African-American men may bring claims under ELCRA; otherwise denied, including any inference that ELCRA was violated here.

90. Plaintiff was subjected to offensive communication and/or conduct on the basis of his membership in this protected class.

**Answer:** Denied.

91. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

**Answer:** Denied.

92.    The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

**Answer:** Denied.

93.    As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe

benefits and have suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

**Answer:** Denied.

94. Plaintiff requests relief as described in the Prayer for Relief below.

**Answer:** Admitted that Plaintiff has a prayer for relief in the complaint, otherwise denied, including any inference that Plaintiff is entitled to any relief.

<u>**COUNT V**</u>
**[ALLEGED] RETALIATION IN VIOLATION OF TITLE VII**

95.    Plaintiff incorporates by reference all allegations in the preceding paragraphs.

**Answer:** Defendant incorporates by reference its answers to Paragraphs 1 through 94 of Plaintiff's Complaint as though fully set forth herein.

96.    At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

**Answer:** Admitted that Defendant employed Plaintiff from late 2021 to early 2023. Otherwise, Scripps lacks knowledge or information sufficient to form a belief about the truth of this allegation, and on that basis denies.

27

97.     A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

**Answer:** Denied.

98.     Defendant's conduct, as alleged herein, violated Title VII which makes it unlawful to harass or retaliate against an employee for engaging in protected activity.

**Answer:** Denied.

99.     Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including, but not limited to when Plaintiff mentioned the differential, harassment, and hostile treatment he received.

**Answer:** Denied.

100.    Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because he reported the issue directly to multiple agents of Defendant.

**Answer:** Denied.

101.   After Plaintiff engaged in protected activity, Defendant's agents thereafter took adverse employment actions against Plaintiff, as alleged in the statement of facts, and terminated him from his position.

**Answer:** Denied.

102. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

**Answer:** Denied.

103. Plaintiff notified Defendant and its agents of the unwelcomed conduct and communication; however, Defendant failed to remedy the same.

**Answer:** Denied.

104. As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

**Answer:** Denied.

105. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

**Answer:** Denied.

106. Plaintiff requests relief as described in the Prayer for Relief below.

**Answer:** Admitted that Plaintiff has a prayer for relief in the complaint, otherwise denied, including any inference that Plaintiff is entitled to any relief.

## COUNT VI
## [ALLEGED] RETALIATION IN VIOLATION OF THE ELCRA

107. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

**Answer:** Defendant incorporates by reference its answers to Paragraphs 1 through 106 of Plaintiff's Complaint as though fully set forth herein.

108. At all material times, Plaintiff was an employee, and Defendant was his employer covered by, and within the meaning of, the ELCRA.

**Answer:** Admitted that Defendant employed Plaintiff from late 2021 to early 2023. Otherwise, Scripps lacks knowledge or information sufficient to form a belief about the truth of this allegation, and on that basis denies.

109.   A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

**Answer:** Denied.


110.   Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to retaliate against an employee who has engaged in protected activity.

**Answer:** Denied.


111.   Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including but not limited to when Plaintiff reported the differential treatment he received.

**Answer:** Denied.


112.   Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because he reported the issue directly to multiple agents of Defendant.

**Answer:** Denied.

113.  After Plaintiff engaged in protected activity, Defendant's agents thereafter took adverse employment actions against Plaintiff, as alleged in the statement of facts, which included terminating him.

**Answer:** Denied.


114.  Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

**Answer:** Denied.


115.  Plaintiff notified Defendant and its agents of the unwelcomed conduct and communication; however, Defendant failed to remedy the same.

**Answer:** Denied.


116.  As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

**Answer:** Denied.


117.  As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

**Answer:** Denied.

118.   Plaintiff requests relief as described in the Prayer for Relief below.

**Answer:** Admitted that Plaintiff has a prayer for relief in the complaint, otherwise denied, including any inference that Plaintiff is entitled to any relief.

## COUNT VII
## [ALLEGED] DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF TITLE I OF THE AMERICANS WITH DISABILITIES ACT OF 1990 42 U.S.C. § 12101, et seq. ("ADA")

119.  Plaintiff incorporates by reference all allegations in the preceding paragraphs.

**Answer:** Defendant incorporates by reference its answers to Paragraphs 1 through 118 of Plaintiff's Complaint as though fully set forth herein.

120.  At all material times, Plaintiff was an employee, and Defendant was Plaintiff's employer, covered by and within the meaning of the ADA.

**Answer:** Admitted that Defendant employed Plaintiff from late 2021 to early 2023. Otherwise, Scripps lacks knowledge or information sufficient to form a belief about the truth of this allegation, and on that basis denies.

121. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

**Answer:** Denied.

122.  Plaintiff informed defendant of stomach issues and his comprehension disability meaning, Plaintiff has a disability within the meaning of the ADA.

**Answer:** Denied

123.  Plaintiff's disabilities under the ADA are qualified, meaning that, with reasonable accommodation, he can perform the essential functions and duties of his job.

**Answer:** Denied.

124.  Section 12112(a) of the ADA, makes it illegal to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

**Answer:** Admitted only that this is an (incomplete) quotation of language from 42 U.S.C. § 12112(a) but denied that this paragraph fully or accurately describes the relevant and applicable law. Otherwise denied, including the suggestion that there was any such discrimination in this matter.

125.   Plaintiff was discriminated against on the basis of his disability when Defendant treated him differently based upon his disability and treatment related to that disability.

**Answer:** Denied.

126.   Defendant's unlawful employment practices were done intentionally, with malice, or with reckless indifference to Plaintiff's rights.

**Answer:** Denied.

127. But for Defendant's illegal discrimination, Plaintiff would not have been damaged nor discharged.

**Answer:** Denied.

128. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

**Answer:** Denied.

129. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

**Answer:** Denied.

130. Plaintiff requests relief as described in the Prayer for Relief below.

**Answer:** Admitted that Plaintiff has a prayer for relief in the complaint, otherwise denied, including any inference that Plaintiff is entitled to any relief.

## COUNT VIII
### [ALLEGED] DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITY ACT, MCL 37.1201, et seq. ("PWDCRA")

131. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

**Answer:** Defendant incorporates by reference its answers to Paragraphs 1 through 130 of Plaintiff's Complaint as though fully set forth herein.

132.   At all material times, Plaintiff was an employee, and Defendant was Plaintiff's employer, covered by and within the meaning of the PWDCRA.

**Answer:** Admitted that Defendant employed Plaintiff from late 2021 to early 2023. Otherwise, Scripps lacks knowledge or information sufficient to form a belief about the truth of this allegation, and on that basis denies.

133.   A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

**Answer:** Denied.

134. Plaintiff has a disability within the meaning of the PWDCRA.

**Answer:** Denied.

135.   Plaintiff's disability is qualified, meaning that, with reasonable accommodation, he can perform the essential functions and duties of his job.

**Answer:** Denied.

136.   MCL 37.1202(b) makes it illegal to, "[d]ischarge or otherwise discriminate against an individual with respect to compensation or the terms,

conditions, or privileges of employment, because of a disability ... that is unrelated to the individual's ability to perform the duties of a particular job or position."

**Answer:** Admitted only that this is an (incomplete) quotation of language from MCL 37.1202(1)(b) but denied that this paragraph fully or accurately describes the relevant and applicable law. Otherwise denied, including the suggestion that there was any such discrimination in this matter.

137.   Plaintiff was discriminated against on the basis of his disability when Defendant treated hm differently based upon his disability and treatment related to that disability.

**Answer:** Denied.

138.   Defendant's unlawful employment practices were done intentionally, with malice, or with reckless indifference to Plaintiff's rights.

**Answer:** Denied.

139. But for Defendant's illegal discrimination Plaintiff would not have been damaged.

**Answer:** Denied.

140. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

**Answer:** Denied.

## COUNT IX
## [ALLEGED] DISCRIMINATION ON THE BASIS OF SEXUAL ORIENTATION IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 et seq. ("ELCRA")

141. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

**Answer:** Defendant incorporates by reference its answers to Paragraphs 1 through 140 of Plaintiff's Complaint as though fully set forth herein.

142. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, ELCRA.

**Answer:** Admitted that Defendant employed Plaintiff from late 2021 to early 2023. Otherwise, Scripps lacks knowledge or information sufficient to form a belief about the truth of this allegation, and on that basis denies.

143.   Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to harass or discriminate against an employee on the basis of that employee's sexual orientation.

**Answer:** Denied.

144.   Plaintiff is an openly gay man, and, as a result, is a member of a protected class pursuant to ELCRA, which Defendant knew because he informed Defendant's agents of the same.

**Answer:** Admitted that gay men may bring claims under ELCRA; otherwise denied, including any inference that ELCRA was violated here.

145. Plaintiff was subjected to offensive communication and/or conduct on the basis of his membership in this protected class.

**Answer:** Denied

146. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

**Answer:** Denied.

147. The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

**Answer:** Denied.

148. As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and have suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

**Answer:** Denied.

149. Plaintiff requests relief as described in the Prayer for Relief below.

**Answer:** Admitted that Plaintiff has a prayer for relief in the complaint, otherwise denied, including any inference that Plaintiff is entitled to any relief.

WHEREFORE, Defendant denies that Plaintiff is entitled to any of the relief he requests, and Defendant requests that judgment be entered for a no cause of action with costs and attorney's fees to Defendant.

## <u>AFFIRMATIVE DEFENSES</u>

Defendant, by and through its attorneys Kienbaum Hardy Viviano Pelton & Forrest, P.L.C., states the following as their Affirmative Defenses:

1.     Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations and/or by the doctrines of estoppel and laches.

2.     Plaintiff's claims may be barred in whole or in part, because he failed to take advantage of preventive or corrective opportunities, failed to comply with legally mandated processes and/or procedures.

3.     Plaintiff's hostile work environment claim is barred because he failed to provide adequate notice of the alleged harassing conduct.

4.     Plaintiff's hostile work environment claims are barred because Defendant exercised reasonable care to prevent and correct promptly any harassment, and Plaintiff unreasonably failed to take advantage of preventive or corrective opportunities to avoid harm otherwise.

5.     Plaintiff's Complaint, in whole or in part, fails to state a claim upon which relief can be granted and should be dismissed as a matter of law.

6.     Plaintiff's claims may be barred, in whole or in part, by his failure to mitigate alleged losses (his entitlement to recover for which is expressly denied). Furthermore, any claim for relief must be set off and/or reduced by wages,

compensation, pay and benefits or other earnings and remunerations, profits and benefits received by Plaintiff since his termination.

7.      Plaintiff's claims and/or damages are limited by the doctrine of after-acquired evidence.

Defendant reserves the right to assert and does not waive any additional or further defenses as may be revealed during discovery or otherwise and reserves the right to amend this Answer to assert any such defenses.

Respectfully submitted,

KIENBAUM HARDY
VIVIANO PELTON & FORREST, P.L.C.

By: */s/Thomas J. Davis*
    Thomas J. Davis (P78626)
    Lauren J. Walas (P87669)
*Attorneys for Defendant*
280 N. Old Woodward Ave., Suite 400
Birmingham, MI 48009
(248) 645-0000
tdavis@khvpf.com
lwalas@khvpf.com

Dated: November 15, 2024

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 15, 2024, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

<u>/s/Thomas J. Davis</u>
Thomas J. Davis (P78626)
Kienbaum Hardy
Viviano Pelton & Forrest, P.L.C.
280 North Old Woodward Ave., Ste. 400
Birmingham, MI 48009
(248) 645-0000
tdavis@khvpf.com

545226