## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

GERALD PALMER, JR.,

               Plaintiff,

v.

SCRIPPS MEDIA, INC.,

               Defendant.

_____/

Case No. 2:24-cv-12353

Hon. Brandy R. McMillion
United States District Judge

### OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 22)

In the instant case, Plaintiff Gerald Palmer ("Plaintiff" or "Palmer") brings multiple employment discrimination and retaliation claims against his former employer, Scripps Media, Inc. ("Defendant" or "Scripps"). Palmer asserts various causes of action pursuant to federal and state statutes.[1] Scripps now moves for summary judgment on all claims pursuant to Fed. R. Civ. P. 56(a). ECF No. 22. The Motion has been adequately briefed, so the Court will rule without a hearing. *See* ECF Nos. 27, 29. For the reasons stated below, the Court **GRANTS** Scripps' Motion for Summary Judgment (ECF No. 22).

---

[1] Palmer's Complaint asserts claims of retaliation and racial discrimination under 42 U.S.C. § 1981 ("§ 1981") (Counts I and II); racial harassment and discrimination, and retaliation under Title VII, 42 U.S.C. § 2000e, *et seq.* ("Title VII") (Counts III and V); racial and sexual orientation discrimination, and retaliation under the Elliot-Larsen Civil Rights Act, MICH. COMP. LAWS. § 37.2101, *et seq.* ("ELCRA") (Counts IV, VI, and IX); and disability discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA") and the Michigan Persons with Disabilities Civil Rights Act, MICH. COMP. LAWS. § 37.1101, *et seq.* ("PWDCRA") (Counts VII and VIII).

**I.**

**A.     Hiring and Initial Training**

Plaintiff was employed by Defendant Scripps Media, Inc. ("Scripps") at its WXYZ Channel 7 ABC News Detroit station ("WXYZ").  ECF No. 1, PageID.2; ECF No. 22, PageID.277.  Palmer is a Black male who identifies as gay and alleges that he has a comprehension related disability.  ECF No. 1, PageID.2, 4.  Palmer began working at WXYZ in November or December 2021 as a part-time production assistant, also referred to as a stage manager. ECF No. 1, PageID.2; ECF No. 22, PageID.277.  Plaintiff received his offer letter from Pauline Retty ("Retty"), a human resources representative for Scripps, and was initially paid $13.00 per hour.  ECF No. 1, PageID.2.  His duties included operating the teleprompter, loading scripts, troubleshooting technical issues, and performing other tasks as assigned. ECF No. 22, PageID.277.

Shortly after agreeing to his start date, Palmer's supervisor, Donn Bousquet ("Bousquet"), contacted Palmer and asked whether he could begin work earlier than planned.  ECF No. 1, PageID.2.  Palmer alleges that he felt pressured to start early and ultimately agreed.  *Id*.  According to Scripps, most new hires completed their training within approximately two weeks of onboarding, with some teleprompting after only a few days.  ECF No. 22, PageID.277.  Palmer trained for approximately three weeks before telling Bousquet that he was ready to work independently. *Id*.

Palmer alleges that his training lacked sufficient guidance and that he encountered technical difficulties he had not been trained to resolve.  ECF No. 1, PageID.2-3; ECF No. 27, PageID.861-862.   Plaintiff consulted other production assistants regarding these issues and alleges that he was told such difficulties were common at the station. ECF No. 1, PageID.3.  Palmer further alleges that Bousquet evaluated employee performance based on their ability to resolve issues regardless of their origin. *Id*.

**B.      Performance Concerns and Feedback**

Complaints regarding Palmer's teleprompter performance began to emerge shortly after his training period ended.  ECF No. 22, PageID.277–278.  In January and early February 2022, executive producer Ronald Love ("Love") and anchors Alicia Smith Karell ("Karell"), Keenan Smith ("Smith"), and Brad Galli ("Galli") raised concerns to Bousquet regarding Palmer's performance.  *Id.* at PageID.278. Bousquet also personally observed performance issues during broadcasts and discussed those concerns with Palmer. *Id*.  In March 2022, producer Tyesha Vinson ("Vinson") reported additional issues with Palmer's performance that affected live broadcasts, such as difficulty keeping pace with anchors and resistance to feedback. *Id.* at PageID.278–279.   Karell reported that Palmer would either scroll the teleprompter too slowly or too quickly, disrupting on-air delivery.  *Id*.  Karell testified that Palmer was the "worst teleprompter operator" she had worked with

3

during her career, and Smith agreed with that assessment. *Id*. at PageID.279. Ali Hoxie ("Hoxie"), another anchor, also expressed similar concerns. *Id*.

Palmer acknowledged that anchors complained about his performance but asserted that many challenges were outside his control. ECF No. 22, PageID.279. He also testified that he did not believe he required additional training and disagreed with Bousquet's reliance on anchor preferences regarding teleprompter operation. *Id*. In an effort to help Palmer better acclimate to the role, Bousquet assigned an experienced teleprompter operator, Lori Carriere ("Carriere"), to provide additional training. *Id*. Carriere reported that Palmer struggled to keep pace and was unreceptive to feedback. *Id*.

## C.    Phone-Use and Attendance Issues

In June 2022, Bousquet issued Palmer a written warning citing improper phone use during broadcasts. ECF No. 22, PageID.280. Palmer admitted to using his phone but said he did so to communicate with the control room via the Unity application. *Id*. Bousquet advised Palmer that the concern involved non-work-related phone activity. *Id*. at PageID.280-281.

Additionally, throughout Palmer's employment, Bousquet received complaints regarding Palmer's punctuality and personally observed him arriving late. ECF No. 22, PageID.280–281. Palmer accessed the station using a badge system, and WXYZ maintained badge-in records, which tracked attendance. *Id*. at

4

PageID.281.   In September 2022, director Matt Bellehumeur ("Bellehumeur") reported that Palmer had arrived significantly late on several consecutive days.  *Id.* Palmer also acknowledged that he was late on those occasions.  *Id.*  Badge-in records Bousquet obtained in November 2022 showed that Palmer had been late nearly every day for which records were available.  *Id.*  Palmer testified that he had no reason to dispute the accuracy of those records.  ECF No. 24, PageID.792.   Bousquet documented Palmer's attendance issues in a quarterly check-in, noting that Palmer's lack of promptness caused delays and stress for production teams.  ECF No. 22, PageID.281-282.  Palmer acknowledged receipt of that documentation.  *Id.*

**D.     January 2023 Suspension, Internal Complaint, and Termination**

On January 3, 2023, Palmer arrived more than two hours late to work.  ECF No. 22, PageID.282.  That same morning, Hoxie lodged another complaint regarding Palmer's performance.  *Id.*  Bousquet informed Retty that he intended to terminate Palmer due to performance and attendance issues.  *Id.*  Retty suspended Palmer with pay pending review and Palmer was informed of the suspension by Bousquet and Retty.  *Id.*  Then, on January 5, 2023, Palmer contacted Scripps's ethics hotline alleging discrimination and harassment.  *Id.* at PageID.283.  Palmer later testified that he believed making the complaint would "cancel out" his termination.  ECF No. 24, PageID.830.   Soon after, Scripps's corporate human resources department directed WXYZ to pause any final employment action pending investigation of

Palmer's internal complaint.  ECF No. 22, PageID.283-284.  The investigation did not substantiate Palmer's claims, and Palmer was terminated on March 31, 2023.  *Id*.

**E.      Allegations of Harassment and Differential Treatment**

Palmer now alleges that beginning in early 2022, he experienced hostility and harassment related to his identity as an openly gay, Black man with a disability, including remarks about his clothing, pride attire, COVID-19 masks, and appearance.  ECF No. 1, PageID.3-5; ECF No. 22, PageID.284.  He alleges that coworkers made negative comments related to his sexual orientation when he wore a rainbow-colored mask, telling him he did not need to wear it and that it was "a lot."  ECF No. 22, PageID.284; ECF No. 27, PageID.872.  He further claims that while wearing a Black Lives Matter mask, a coworker told him to "pick a mask" and that he did not need to wear that one, which Palmer interpreted as a negative comment related to race.  ECF No. 22, PageID.285; ECF No. 27, PageID.873. Palmer testified that no one used racial or homophobic slurs or made otherwise derogatory remarks to him.  ECF No. 24, PageID.735.

Palmer also alleges that another production assistant, Shelby Rabideaux ("Rabideaux"), was treated more favorably despite alleged performance complaints from anchor Glenda Lewis ("Lewis").  ECF No. 1, PageID.5; ECF No. 22, PageID.287.  Palmer did not personally witness any complaint against Rabideaux and relied on statements he attributes to Lewis.  *Id.*  Lewis denies making the

statements Palmer attributes to her and states that she did not complain about Rabideaux.  ECF No. 22, PageID.287.  Rabideaux had no disciplinary record and was viewed by supervisors and colleagues as a strong performer.  *Id.*

## II.

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Where the movant satisfies its initial burden, the nonmoving party must identify specific record evidence showing a genuine dispute of material fact, as the Court determines the existence of such a dispute by evaluating the record as a whole. *Green Genie, Inc. v. City of Detroit, Mich.*, 63 F.4th 521, 526 (6th Cir. 2023) ("[T]he nonmoving party must present 'significant probative evidence' revealing that there is 'more than some metaphysical doubt as to the material facts necessitating a trial[.]'") (citation modified).  "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts[,]" otherwise, the court need not accept a version of facts that the record disproves. *Scott v. Harris*, 550 U.S. 372, 380-381 (2007).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"The non-moving party may not rely on his pleadings alone but instead must demonstrate the existence of a genuine issue for trial by pointing to 'specific facts' that create such an issue." *Hamilton v. Myers*, 281 F.3d 520, 525 (6th Cir. 2002) (citation omitted). Courts will find that a genuine dispute of material fact exists where the record reveals "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A mere scintilla of evidence" is insufficient to forestall summary judgment." *Babcock & Wilcox Co. v. Cormetech, Inc.*, 848 F.3d 754, 758 (6th Cir. 2017). However, the court is under no obligation to parse a summary judgment record to search out facts or evidence not brought to its attention. *In re Morris*, 260 F.3d 654 (6th Cir. 2001). "It is the obligation of the non-moving party ... not the Court, to scour the record in search of the evidence that would defeat a motion for summary judgment: Rule 56 'requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

### III.

Scripps moves for summary judgment on all of Palmer's claims. *See generally* ECF No. 22. Although the claims arise under multiple statutes, courts generally analyze them under the same substantive legal standards, where

8

applicable. Accordingly, the Court will address Palmer's claims by theory of liability rather than by statutory label or count number.[2]

## A. Discrimination and Retaliation

Before moving to the merits of Scripps's motion, the Court must consider whether Palmer has presented any direct evidence of discrimination to prove his claims to apply the correct legal framework. "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Sampson v. Flex N Gate Nine Mile, LLC*, No. 23-1717, 2024 WL 1887003, at *3 (6th Cir. Apr. 30, 2024) (citation modified). Absent direct evidence of discrimination, the *McDonnell Douglas* burden-shifting framework applies. *Lyons v. Michigan Dep't of Corr.*, 812 F. App'x 305, 308 (6th Cir. 2020). Scripps asserts that Palmer has no direct evidence of discrimination; thus, the Court must evaluate his claims under the *McDonnell Douglas* framework. ECF No. 22, PageID.289 (citing *Hecht v. Nat'l Heritage Acads., Inc.*, 499 Mich. 586, 607 n. 34 (2016)).

---

[2] The Court notes that Palmer's Response Brief advances arguments premised on theories not pleaded in the Complaint, including a failure to accommodate claim and a disability-based hostile work environment claim. *See* ECF No. 27, PageID.895-897. Palmer's Complaint alleges disability discrimination under the ADA and PWDCRA based on disparate treatment only. *See* ECF No. 1, PageID.17-20. Because a plaintiff may not raise a new theory of liability for the first time at summary judgment, the Court does not consider these arguments in resolving Defendant's Motion for Summary Judgment. *See Edison v. Twp. of Northville*, 752 F. Supp. 3d 808, 821 (E.D. Mich. 2024) ("[A] plaintiff may not defeat summary judgment by asserting a claim that he did not plead in the complaint.").

Palmer appears to concede that the record contains no direct evidence supporting his claims.  ECF No. 27, PageID.889-890.  In his Response, he argues that there are multiple procedural avenues courts can take to evaluate employment discrimination claims at the summary judgment stage, and that the *McDonnell Douglas* framework is simply one of those avenues, though not necessarily the most fitting in every employment discrimination case.  ECF No. 27, PageID.889-890.  However, Plaintiff does not raise any further arguments regarding other alternatives that better suit his claims and instead applies *McDonnell Douglas* throughout.  *See generally id*. at PageID.890-900.  This Court routinely applies the *McDonnell Douglas* framework when evaluating claims of employment discrimination and retaliation that rely on indirect evidence and will do so in the instant case.[3]

### 1.    *McDonnell Douglas Burden-Shifting Framework*

The first step of the *McDonnell Douglas* framework requires the plaintiff to establish a prima facie case of discrimination or retaliation.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *George v. Youngstown State Univ.*, 966 F.3d

---

[3] *See e.g.*, *Bloomer v. Word Network Operating Company, Inc.*, 785 F.Supp.3d 251 (E.D. Mich., 2025) (applying the *McDonnell Douglas* framework to employment discrimination claims brought under § 1981), *Klumpp v. Uniloy, Inc.*, 2024 WL 6901279 (E.D. Mich., 2024) (applying the *McDonnell Douglas* framework to employment discrimination claims brought under ELCRA), *Williams v. Crystal Flash*, No. 2:24-CV-11640, 2024 WL 3541496 (E.D. Mich. July 25, 2024), *motion for relief from judgment denied sub nom. Williams v. Crystal Flash Co.*, No. 24-CV-11640, 2024 WL 5440060 (E.D. Mich. Nov. 7, 2024), *appeal dismissed,* No. 25-1186, 2025 WL 1541716 (6th Cir. Apr. 9, 2025), and *reconsideration denied,* No. 2:24-CV-11640, 2025 WL 2463149 (E.D. Mich. Aug. 26, 2025), *appeal dismissed,* No. 25-1819, 2025 WL 3772146 (6th Cir. Nov. 3, 2025) (applying the *McDonnell Douglas* framework to employment discrimination claims brought under Title VII).

446, 459 (6th Cir. 2020); *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). If the plaintiff successfully establishes his prima facie case, the burden of production then shifts to the employer to offer a "legitimate, non-discriminatory or retaliatory reason" for the adverse employment action. *George*, 966 F.3d at 459. The burden then shifts back to the plaintiff to show that the employer's proffered reason is pretextual. *Laster*, 746 F.3d at 730. While the burden of production shifts between the parties, the burden of persuasion remains with the plaintiff throughout the process. *Laster*, 746 F.3d at 730 (citing *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007)).

A plaintiff may establish pretext by showing that the employer's proffered reason: (1) had no basis in fact, (2) did not actually motivate the employer's actions, or (3) was insufficient to motivate the employer's action. *See Miles v. South Cen. Hum. Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020). Although plaintiffs are not confined to these three categories, they must still articulate how the evidence they rely upon supports a reasonable inference that the employer's stated reason was not the true reason for the adverse action. *Id*. The ultimate inquiry remains whether the employer acted for the stated reason or if that reason was pretextual. *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012).

The Court must ensure that the burden-shifting framework does not obscure the dispositive question at summary judgment: "whether the record contains a

genuine dispute of material fact requiring resolution by a jury." *See Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 776 (6th Cir. 2016) ("VHS Detroit") (citing *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 813 (6th Cir. 2011); *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000).

### 2. *Retaliation (Under Title VII, 1981, ELCRA)*

Palmer alleges that Scripps retaliated against him in violation of Title VII, § 1981, and ELCRA by terminating his employment after he complained of discrimination through Scripps's ethics hotline.  ECF No. 1, PageID.8, 14, 16. Scripps now moves for summary judgment, arguing that Palmer cannot establish a causal connection between any protected activity and his termination and, moreover, cannot rebut Scripps's legitimate, nonretaliatory reason for the adverse action: Palmer's ongoing performance and attendance deficiencies.  ECF No. 22, PageID. 298-299.

To establish a prima facie case of retaliation, the plaintiff must show that: (1) he engaged in Title VII protected activity; (2) the employer knew that he engaged in that protected activity; (3) the employer subsequently took an adverse employment action against him; and (4) the adverse action was causally connected to the protected activity.  *Ladd v. Grand Trunk W. R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009); *see also Stewart v. Esper*, 815 Fed. Appx. 8 (6th Cir. 2020) (unpublished).

Defendant does not contest that Palmer satisfied the first prima facie element

12

by reaching out via Scripps' ethics hotline on January 5, 2023, to report his discrimination claims after learning of his suspension, and the Court finds no reason to suggest otherwise. *Arredondo v. Beer Barrel Inc.*, 645 F. Supp. 3d 739, 754 (N.D. Ohio 2022) (A complaint to management about discriminatory employment practices can constitute protected activity.)  It is also undisputed that Scripps, through the Employee Relations department, notified Bousquet of the complaint and directed that no final employment action be taken until the investigation was complete; and that Bousquet subsequently terminated Palmer following the investigation.  Therefore, elements two and three are not in dispute.

Scripps, instead, argues that summary judgment on the retaliation claim is proper because Palmer has not shown a causal link between the protected activity and his termination, as required by element four.  ECF No. 22, PageID.298.

### i.  Palmer Failed to Show Causal Connection

To show a causal connection, Palmer "must produce sufficient evidence from which one could draw an inference that the employer would not have taken the adverse action against the plaintiff had the plaintiff not engaged in activity that Title VII protects." *Taylor v. Geithner*, 703 F.3d 328, 339 (6th Cir. 2013) (citing *Abbott v. Crown Motor Co.,* 348 F.3d 537, 543 (6th Cir. 2003)); *see also Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 n.2 (6th Cir. 2008) (ELCRA).

Relying on *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001),

Scripps proffers that there is no evidence of causality when an employer "proceeds along lines previously contemplated, though not yet definitively determined," even if the final action occurs after protected activity.  ECF No. 22, PageID.298.  Retty testified that Bousquet came to her on January 3, 2023, informing her that he planned to fire Palmer, shortly after receiving complaints about Palmer's performance and learning that Palmer had also arrived 2 hours late to work that day.  ECF No. 22-14, PageID.581.  Retty placed Palmer on paid suspension that same day.  *Id*.  Palmer admits he arrived at work 2 hours late and offers no basis to dispute Hoxie's complaint.  ECF No 27, PageID.883.  Palmer does not make any substantive argument defending his ability to establish a prima facie case of retaliation; he merely cites a dissent from a Supreme Court opinion by Justice Thomas to criticize the application of the *McDonnell Douglas* framework to employment discrimination claims based on circumstantial evidence.  *Id*. at PageID.882-883.  Palmer only appears to dispute Scripps' assessment of these particular facts on the basis that Palmer never received any disciplinary write-ups regarding his attendance, and Bousquet only discussed Palmer's attendance with him on two occasions, not "numerous times," as Bousquet claimed.  *Id.*  Palmer also emphasizes that he did not receive formal disciplinary write-ups regarding attendance and that Retty did not personally review documentation of the performance complaints Bousquet cited.  *Id*.

Those assertions do not controvert Scripps's causation evidence.  Whether

Palmer received a formal write-up or whether Retty independently reviewed each underlying complaint does not bear on when the termination decision was made or whether it was motivated by protected activity, given other undisputed facts in the record.  For instance, Palmer testified that he believed his internal complaint would "cancel out" his suspension and impending termination, so he was sure he was "going back to [his] job."  ECF No. 24, PageID.830; ECF No. 22-15, PageID.590-591.  Additionally, Bousquet met with Palmer a month before his suspension, during their 4th-quarter check-in, and informed him that promptness needed to be a higher priority.  ECF No. 22-7, PageID.514.  Palmer acknowledged the check-in on December 1, 2022, but arrived at work late every day thereafter until January 3, 2023, when he arrived 2 hours late because he overslept.  *Id.*

Because Palmer fails to properly address Scripps's factual showing that the termination decision predated his hotline complaint, the Court may consider those facts undisputed under Fed. R. Civ. P. 56(e)(2).  Any reasonable jury would expect an employer to terminate a person who came to work late almost every day.  And in Palmer's case, he arrived late every day consecutively for an entire month after affirming, *in writing*, that his punctuality needed improvement.  No reasonable jury would negate this conduct simply because a complaint was later filed.  *See Beard v. AAA of Mich.*, 593 F. App'x 447, 451 (6th Cir. 2014) (discrimination complaints are not a "protective amulet when faced with the possibility that [a plaintiff's]

15

preexisting disciplinary problems could lead to his termination").

The Court, therefore, finds that no genuine dispute exists as to whether there was a causal connection between the ethics hotline complaint and Palmer's termination. Even assuming *arguendo* that Palmer could establish a prima facie case, his claim nevertheless fails because he has not produced evidence from which a reasonable jury could conclude that Scripps's proffered reason for his termination, persistent performance and attendance deficiencies, was pretextual.

### ii. Palmer Fails to Show Pretext

Once an employer articulates a legitimate, non-retaliatory reason for an adverse employment action, the burden shifts back to the plaintiff to show that the proffered reason was a pretext for retaliation. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). A plaintiff may demonstrate pretext by showing that the employer's stated reason: (1) had no basis in fact; (2) did not actually motivate the adverse action; or (3) was insufficient to motivate the adverse action. *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020). These categories are not rigid requirements, but rather a "convenient way of marshaling evidence" toward the ultimate inquiry: whether the employer's stated reason was the true reason for the challenged action. *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012).

Scripps argues that Palmer cannot rebut the proffered reason as pretextual

because the record overwhelmingly supports its stated reason for termination.  ECF No. 22, PageID.277-284.   According to Scripps, Palmer experienced ongoing performance problems from the outset of his employment, including repeated teleprompter errors, difficulty accepting feedback, improper phone use during broadcasts, and chronic tardiness. *Id.*  Scripps further contends that Palmer admitted many of these issues in his own testimony and that Bousquet documented his concerns, provided feedback, assigned additional training, and escalated discipline only after Palmer failed to improve.  *Id*.  Scripps emphasizes that poor performance and attendance are well-established, legitimate grounds for termination, and that disagreement with an employer's business judgment does not establish pretext and the Court agrees.  *See*, *e.g.*, *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) (disagreement with employer's honest business judgment regarding his work insufficient evidence of pretext in the face of the substantial evidence that employer had a reasonable basis to be dissatisfied); *see also Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 588 (6th Cir. 2002) ("Terminating an employee because he fails to perform satisfactorily is a legitimate and nondiscriminatory reason to end his employment.").

Palmer does not meaningfully dispute that performance and punctuality were the reasons articulated for his termination.  Instead, his pretext argument rests on four themes: (1) that discipline was selectively enforced; (2) that the timing and

17

escalation of discipline suggest retaliatory motive; (3) that Scripps relied on subjective complaints from anchors who lacked supervisory authority; and (4) that Scripps's justifications for termination shifted over time. ECF No. 27, PageID.890-894. None of these arguments creates a genuine dispute as to a material fact.

Scripps has consistently maintained that Palmer was terminated for persistent performance problems, improper phone use during broadcasts, and chronic lateness, despite repeated feedback and warnings. The record provides substantial support for that explanation. Palmer largely admits that multiple complaints were made about his performance, that he was late to work on numerous occasions, and that these issues persisted throughout his employment at Scripps without lasting improvement, because he believed these problems stemmed from factors for which he should not have to take responsibility, since they were not his fault. ECF No. 24, PageID.731. The record makes clear that Mr. Palmer repeatedly failed to take accountability for anything that went wrong during his tenure at WXYZ and did not show consistent improvement despite repeated attempts by Bousquet, anchors, and other production assistants to help him perform better.

For completeness, the Court will proceed with considering the 4 arguments that Palmer offers to rebut Scripps' proffered reason, though none of them create a genuine dispute of material fact as to pretext. First, Palmer relies on Bousquet's alleged "selective enforcement of workplace rules," but this does not advance his

retaliation claim.   Palmer points to a coworker, Shelby Rabideaux, whom he contends was treated more favorably. But retaliation claims do not turn on comparator evidence, and Palmer's allegations regarding Rabideaux rest on speculation rather than evidence of comparable misconduct or disciplinary history. Moreover, Palmer does not dispute that he got repeated performance complaints and was chronically late; conduct materially different in scope and severity from the conduct he attributes to Rabideaux. These allegations, therefore, do not undermine Scripps's stated reason or support an inference that retaliation was the real motive.

Second, Palmer's timing argument is also insufficient. Although Palmer emphasizes that discipline escalated after he engaged in protected activity, the record shows that concerns regarding his performance and attendance well predate his ethics hotline complaint.   Where an employer proceeds along a course of action already contemplated before protected activity occurred, temporal proximity alone is insufficient to establish pretext. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001).

Third, Palmer's challenge to Scripps's reliance on complaints from on-air talent does not demonstrate pretext.  Employers may rely on subjective performance feedback, particularly where, as here, that feedback is consistent, comes from multiple sources, and is corroborated by the supervisor's own observations. Disagreement with an employer's evaluation of job performance (or the amount of

weight it assigns to respective feedback from other employees) does not establish that the proffered reason was false or retaliatory. *Russell v. Michigan Dept. of Health and Human Services*, No. 16-14135, 2018 WL 1168981, at *9 (E.D. Mich. Mar. 6, 2018) ("[E]mployers are not precluded from relying on subjective assessments in making an employment decision."); *Allen v. Ingersoll-Rand Co.*, No. 1:96-CV-6-M, 1997 WL 579140, at *10 (W.D. Ky. June 17, 1997) ("evidence of alleged discriminatory actions and comments attributable to individuals . . . not involved in the adverse employment decision cannot form the basis for demonstrating that the decisions made by other individuals were pretext for discrimination").

Finally, Palmer's contention that Scripps offered shifting or inconsistent explanations for his termination is not supported by the record. Shifting justifications may, in some circumstances, permit an inference of pretext, but only where an employer offers materially different or contradictory reasons at different stages of the decision-making process. *See Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996). That did not occur here. From the outset, Scripps identified the same core deficiencies as the basis for Palmer's termination: performance, punctuality, and improper phone use. Palmer's characterization of these explanations as "shifting" reflects disagreement with Scripps's assessment, not inconsistency in its reasoning. Conclusory assertions, supported only by the plaintiff's own opinions, do not create a genuine issue of material fact that can

20

withstand a motion for summary judgment. *Arendale v. City of Memphis*, 519 F.3d 587, 608 (6th Cir. 2008); *see also Johari v. Big Easy Rest., Inc.*, 78 F. App'x 546, 548 (6th Cir. 2003). Palmer has not produced evidence from which a reasonable jury could conclude that Scripps's stated reason for terminating his employment was false or that retaliation was the real motive. Because Palmer fails to rebut Scripps's legitimate, nonretaliatory reason with sufficient evidence to create a genuine dispute of material fact, summary judgment on his retaliation claims is warranted.

### 3. Disparate Treatment (Under Title VII, 1981, ELCRA)

Under *McDonnell Douglas*, Palmer must first make out a prima facie case of discrimination based on disparate treatment, which requires him to show that: (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) he was qualified for the position; and (4) similarly situated non-protected employees were treated more favorably. *See VHS Detroit Receiving*, 814 F.3d at 776 (sex discrimination); *see also Moore v. Coca-Cola Bottling Co. Consol.*, 113 F.4th (6th Cir. 2024) (race discrimination).

There is no dispute between the parties as to whether Palmer satisfied the first three prongs. Instead, Scripps argues that Palmer and his purported comparator are not similarly situated. To establish this element, an "exact correlation with the employee receiving more favorable treatment" is not required for them to be similarly situated, instead Palmer bears the burden of proving he and the purported

21

comparator were "similar in 'all of the *relevant* aspects.'"  *Redlin v. Grosse Pointe Pub. Sch. System*, 921 F.3d 599, 610 (6th Cir. 2019) (citation modified).

### i.  Palmer and Rabideaux are not similarly situated

Plaintiff's proposed comparator is Shelby Rabideaux, a production assistant whom Bousquet also supervised.  ECF No. 1, PageID.7; ECF No. 22, PageID.287. Palmer admits that he did not observe Bousquet's interactions with other production assistants and cannot say whether Bousquet held them to the same standards he applied to Palmer.  ECF No. 22, PageID.287.  Palmer's assertion that Rabideaux was treated more favorably rests entirely on an alleged statement by anchor Glenda Lewis, who Palmer claims told him that she complained about Rabideaux's teleprompter performance, but that Rabideaux was not disciplined.  *Id*.  Palmer did not personally witness any such complaint, does not know when it allegedly occurred, and testified that Lewis never stated that Rabideaux was late to work or that any performance issues occurred more than once.  *Id*.  Lewis denies making the statement attributed to her, denies complaining about Rabideaux, and states that she does not know why Palmer is involving her in this matter.  ECF No. 22-20, PageID.673-674.  Palmer further acknowledged that it would not have been appropriate for Lewis to share personnel information in her professional capacity and testified that any such conversation occurred only because they were friends. ECF No. 24, PageID.777.

It is undisputed that anchors such as Lewis do not have supervisory authority and cannot hire, fire, discipline, or otherwise make personnel decisions. ECF No. 22, PageID.288; ECF No. 27, PageID.887. Rabideaux is a white woman, but Palmer does not know her sexual orientation or whether she has a disability. ECF No. 24, PageID.744, 778. The record further reflects that Rabideaux had no disciplinary record and was viewed by Bousquet and multiple colleagues as a strong performer. ECF No. 22-4, PageID.486, 490; ECF No. 22-5, PageID.497; ECF No.22-8, PageID.519; ECF No. 22-9, PageID.553; ECF No. 22-10, PageID.560; ECF No. 22-12, PageID.567.

Based on these undisputed facts, Palmer has not produced sufficient evidence to show that he and Rabideaux were similarly situated in relevant respects. In *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1116 (6th Cir. 2001), the Sixth Circuit held that a plaintiff failed to establish a prima facie case of disparate treatment where he did not show that he and his proposed comparator were similarly situated "with respect to the severity and frequency of their performance errors." That principle applies with equal force here.

Palmer relies primarily on an alleged statement by anchor Lewis suggesting that she complained about Rabideaux's teleprompter performance and that Rabideaux was not disciplined. ECF No. 24, PageID.744. Scripps argues that the alleged statements are inadmissible hearsay. However, the court need not (and

23

should not) consider Lewis' statements at summary judgment. *Euring v. Equifax Info. Services, LLC*, No. 19-CV-11675, 2020 WL 1508344, at *7 (E.D. Mich. Mar. 30, 2020) ("The Sixth Circuit has long recognized that a court may not consider hearsay when deciding a summary judgment motion.") And, moreover, even crediting Palmer's account, it does not demonstrate that he and Rabideaux engaged in comparable conduct "without differentiating or mitigating circumstances" that would justify different treatment. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).

The undisputed record reflects a sustained pattern of performance and attendance issues, including repeated complaints from multiple anchors, improper phone use during broadcasts, and chronic tardiness, as documented by Palmer's badge-in data. Palmer was counseled about these deficiencies, received additional training, and ultimately issued a final written warning before termination. Scripps relied on this documented history in determining that termination was warranted.

By contrast, there is no evidence that Rabideaux had a comparable history of documented performance deficiencies, attendance problems, or progressive discipline. Palmer's contention that he lacked a formal "disciplinary record" does not place him on equal footing with an employee for whom no similar documentation exists. Whether particular communications are labeled "discipline," "check-ins," or "warnings" is immaterial where the record establishes repeated

24

documentation of deficiencies and notice to the employee.  Therefore, the Court finds that Palmer fails to establish that Rabideaux was similarly situated in all relevant respects.

Because Palmer has not identified a valid comparator, he fails to establish a prima facie case of disparate-treatment discrimination based on race or sex.

### ii. Even if Palmer Could Establish a Comparator, He Failed to Show Pretext

The Court already held that Palmer has failed to show Scripps' cited reasons for his termination were pretextual, but it will provide further analysis on Palmer's pretext arguments concerning a comparator for the purpose of completeness.  As discussed above, Scripps consistently identified Palmer's persistent performance issues and chronic tardiness as the basis for his termination.  Palmer attempts to show pretext by arguing that Scripps selectively enforced workplace rules by disciplining him more harshly than Rabideaux.  But selective-enforcement arguments require a showing that the comparator engaged in conduct of "comparable seriousness." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 n.5 (6th Cir. 1992); *see also Warfield v. Lebanon Corr. Inst.*, 181 F.3d 723, 731 (6th Cir. 1999).

The Sixth Circuit has expressly rejected the notion that a plaintiff may establish pretext by pointing to isolated acts by different coworkers while ignoring the cumulative seriousness of his own misconduct.  *See VHS Detroit*, 814 F.3d at 777.  A discrimination plaintiff, "terminated for committing acts A, B, C, D, and E,"

25

cannot rely solely on the fact that a coworker outside the protected class was not terminated for committing act B," they must "at least establish that a similarly-situated . . . employee . . . committed acts A, B, C, D, and E (or, perhaps, acts 'comparably serious' to acts A, B, C, D, and E)." *Warfield*, 181 F.3d at 730.

Here, Palmer fails to do that.  He has not produced evidence that Rabideaux engaged in misconduct that is comparable in frequency or severity to his own.  At most, he points to a single, unsubstantiated complaint attributed to a non-supervisory anchor.  And that evidence is insufficient to support an inference of pretext, particularly where Palmer's termination followed a documented pattern of deficiencies and failed remediation.  Therefore, as a matter of law, his pretext argument fails.

Accordingly, even if Palmer could establish a prima facie case of disparate treatment based on race or sex, no reasonable jury could conclude that Scripps's stated reason for his termination was a pretext for unlawful discrimination. Summary judgment is therefore appropriate on Palmer's race and sex-based disparate-treatment claims under Title VII, § 1981, and ELCRA.

### 4.    *Disparate Treatment (Under ADA and PWDCRA)*

Palmer's Complaint also raises two counts of disability discrimination based on a theory of disparate treatment, the first under the ADA and the second under the PWDCRA.  The Court will analyze these claims together because "[c]laims under

the ADA and the PWDCRA are 'generally analyzed identically.'" *Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 566 (6th Cir. 2023) (citing *Henderson v. Chrysler Grp., LLC*, 610 F. App'x 488, 497 (6th Cir. 2015)).

In order to establish a prima facie case of disparate-treatment disability discrimination under the ADA, Palmer must show that (1) he was disabled; (2) he was otherwise qualified for the job, with or without reasonable accommodation; (3) he suffered an adverse employment decision; (4) his employer knew or had reason to know of his disability; and (5) similarly situated employees were treated more favorably. *O'Donnell v. U. Hosps. Cleveland Med. Ctr.*, 833 Fed. Appx. 605, 619 (6th Cir. 2020) (unpublished).

Here. Scripps argues that summary judgment is proper because Palmer does not have a qualifying disability, and he offers no evidence that he has any current physical or mental impairment that substantially limits a major life activity, as required under the ADA and PWDCRA. ECF No. 22, PageID.297. Palmer relies on childhood accommodations and claims of present functional limitations to establish that he is disabled.

A plaintiff's "bare assertions" regarding a health condition, "without any supporting medical evidence, cannot establish a 'physical or mental impairment' within the meaning of the ADA." *Neely v. Benchmark Fam. Servs.*, 640 F. App'x 429, 433 (6th Cir. Jan. 26, 2016). After considering Palmer's deposition testimony

alongside other evidence contained in the record, the Court believes that there is potentially enough evidence to create a genuine dispute as to whether Palmer has a learning or comprehension disability.  Taken as a whole, the record, including Palmer's childhood accommodations history, his performance reviews from Scripps, and his deposition testimony, suggests that he has difficulty with focus, comprehension, problem-solving, and following verbal instructions.  ECF No. 24, PageID.806, 853, 855, 857-858.  Deposition testimony from Palmer's colleagues that he often misunderstood instructions or struggled to incorporate feedback further corroborates this.  ECF No. 22-5, PageID.495; ECF No. 22-7, PageID.506-507, 509; ECF No. 22-10, PageID.597.  But this dispute is ultimately immaterial, where, as the Court already stated, Palmer cannot show a similarly situated, non-disabled comparator or provide any basis upon which a reasonable jury could conclude that Scripps's reason for terminating him was based on pretext.

Consequently, summary judgment is proper in Scripps favor on Palmer's disability discrimination/disparate treatment claims under the ADA and PWDCRA.

**B.     Hostile Work Environment (Title VII, 1981, and ELCRA)**

Establishing a *prima facie* hostile work environment claim based on circumstantial evidence, requires a showing that Plaintiff: (1) is a member of a protected class; (2) was subjected to unwelcome harassment; (3) the harassment was based on their race, color, or sex; (4) the harassment was sufficiently severe or

28

pervasive to alter the conditions of employment and create an abusive working environment; and (5) the employer knew or should have known about the harassment and failed to act. *Williams v. CSX Transp. Co., Inc.*, 643 F.3d 502, 511 (6th Cir. 2011); *see also Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 307 (6th Cir. 2016) (addressing hostile work environment based upon sex). The harassing conduct must be objectively hostile or abusive, and the Plaintiff must also subjectively perceive the environment to be abusive. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993).

Courts are to consider the totality of circumstances surrounding alleged incidents of unwelcome harassment to evaluate whether they constitute a hostile work environment. *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999). "In determining whether an actionable hostile work environment claim exists, we look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116, 122 (2002) (internal quotation marks and citation omitted). "Simple teasing, [ ] offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal

quotation marks and citations omitted).

Scripps's argument addresses only two of the five elements, stating that Palmer failed to establish that the alleged harassment was based on his race or sexual orientation, or that it was sufficiently severe or pervasive to alter the terms of his employment.   ECF No. 22, PageID.295.   Since Defendant offers no basis to challenge that the remaining elements are satisfied, and the Court's review of the record suggests the same; it will treat them as undisputed for the purpose of its analysis.   Consequently, the dispositive questions before the Court are (1) whether the record evidence supports Palmer's claim that he was harassed for being Black and gay, and (2) whether the discriminatory harassment was severe or pervasive enough to alter the terms or conditions of his employment.

Palmer argues he endured ongoing comments referencing his attire, identity, and expression.   ECF No. 27, PageID.897-898.   Palmer concedes that these comments were facially neutral, but claims they carried "clear racial and sexual-orientation undertones, targeting protected characteristics." *Id*. at 898.   Palmer also argues that the cumulative impact of these remarks, taken together with management's failure to intervene and the selective enforcement of standards among employees, "created a working environment where plaintiff was singled out." *Id*. Lastly, Palmer points to a purported statement by Alicia Smith threatening to have Palmer removed from the station, without offering any evidence to suggest that the

30

remarks were racially or sexually discriminatory in nature.  *Id.*

### 1.      *Palmer can't show harassment was because of race or sex*

Palmer's race-based hostile work environment theory rests on a comment made by a Black coworker regarding a Black Lives Matter mask, which Palmer subjectively perceived as racially motivated.  The record contains no evidence of racial slurs, derogatory racial language, or statements referencing Palmer's race; nor does it reflect any racial hostility or stereotyping directed toward him.  The comment at issue concerned a social or political symbol rather than Palmer's distinct racial identity.  And the speaker himself was also Black, further weakening any inference that the remark was motivated by racial animus.  ECF No. 24, PageID.741.  Because Palmer's allegations rely solely on his subjective interpretation of facially neutral conduct and lack objective evidence linking the comment to his race or any other protected characteristic, no reasonable jury would find that the alleged harassment was based on his race or sexual orientation.

### 2.      *Palmer Cannot Show Harassment Was Sufficiently Severe or Pervasive*

Palmer must also show a genuine dispute of material fact as to whether the racial harassment he experienced was sufficiently severe or pervasive to defeat summary judgment on his hostile work environment claims.  In determining whether racial harassment is sufficiently severe or pervasive to create a hostile work environment, courts evaluate the conduct under both an objective and subjective

standard.  *Johnson v. Ford Motor Co.*, 13 F.4th 493, 505 (6th Cir. 2021).  This requires a showing that the conduct was severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and that the plaintiff subjectively regarded the environment as abusive.  *Id*.  Concluding that a work environment was hostile or abusive does not require proof that the conduct seriously affected the plaintiff's psychological well-being or resulted in injury. *Harris v. Forklift Sys.*, Inc., 510 U.S. 17, 22 (1993).

As part of this evaluation, courts consider the totality of the circumstances, rather than examining each alleged incident in isolation.  *Schlosser v. Precision Planting, LLC*, 113 F.4th 680, 687 (6th Cir. 2024) (quoting *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006)). Although the inquiry is not "mathematically precise," relevant considerations include the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or merely an offensive utterance; and whether it unreasonably interfered with the employee's work performance.  *Harris*, 510 U.S. at 22–23.  Generally, "simple teasing, offhand comments, and isolated incidents (unless extremely serious)" do not amount to discriminatory changes in the terms and conditions of employment.  *Faragher*, 524 U.S. at 788.  By contrast, harassing acts or comments of a continual nature may constitute pervasive harassment and support a finding of an objectively hostile work environment.  *Johnson*, 13 F.4th at 505.

Importantly, while whether harassment was severe or pervasive is often described as a "quintessential question of fact" reserved for a jury, that characterization does not relieve a plaintiff of the obligation to present evidence from which a reasonable jury could so conclude. *Schlosser*, 113 F.4th at 687 (quoting *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 310 (6th Cir. 2016)). At summary judgment, the Court does not decide whether the conduct was severe or pervasive; it asks only whether, viewing the evidence in the light most favorable to the nonmovant, he presented enough evidence for a reasonable jury to find it was. The Court finds that Palmer fails to meet this burden.

Defendant argues that Palmer cannot establish a hostile work environment because he merely alleges isolated comments and subjective perceptions rather than conduct that was objectively severe or pervasive. Specifically, Palmer admits that no racial epithets or anti-gay slurs were ever used. ECF No. 22, PageID.284. As evidence to support his race and sex-based hostile work environment claim, Palmer points to comments about a Black Lives Matter mask, suggesting that he didn't need to wear them, that he perceived as racially motivated, other references to a rainbow-colored pride mask and one reference to his painted nails that he perceived as motivated by his sexual orientation, where he alleges that a coworker observed these displays of his sexual orientation and stated that they were 'a lot,' or unnecessary." ECF No. 27, PageID.898.

33

The Court finds that these allegations are insufficient as a matter of law.  In *Culton v. Unifi Aviation, LLC*, 2024 WL 4340708 (E.D. Mich. Sept. 27, 2024), the Court addressed materially similar factual and legal claims.  There, a Black and gay plaintiff alleged a hostile work environment after coworkers commented that they did not "support" her Black Lives Matter and rainbow masks, characterized the masks as "offensive," and management issued corrective action.  *Id*. at *1–2.  The Court held that a handful of comments regarding masks, none of which contained explicit references the plaintiff's race, sex, or sexual orientation—failed to create a genuine dispute of material fact.  *Id*. at *4–5.

While the severe-or-pervasive inquiry is often reserved for a jury, no reasonable jury could conclude on this record that Palmer was subjected to harassment sufficiently severe or pervasive to alter the terms or conditions of his employment.  Summary judgment is therefore warranted on the hostile work environment claims.

## C.    Economic Damages

Scripps also seeks summary judgment on Palmer's claimed economic damages, arguing that Palmer failed to disclose or calculate any such damages as required by Federal Rules of Civil Procedure 26(a)(1)(A)(iii) and 37(c)(1). Specifically, Scripps contends that Palmer did not provide a computation of back pay, front pay, or other economic losses during discovery and therefore should be

barred from pursuing those remedies. Because economic damages are remedies contingent on a viable substantive claim, the Court need not reach Scripps's arguments regarding Palmer's failure to calculate or disclose economic damages under Federal Rules of Civil Procedure 26 and 37. *See, e.g.*, *Proctor v. Panera, LLC*, No. 14-14824, 2016 WL 4191760, at *7 (E.D. Mich. Aug. 9, 2016) ("If Plaintiffs prove they are entitled to economic damages, they may be recovered as damages arising from a finding of liability on their substantive legal claims.")  Since the Court grants summary judgment in favor of Scripps on all of Palmer's substantive claims, his request for economic damages necessarily fails as a matter of law.

### IV.

Based on the foregoing, Palmer failed to establish a genuine dispute of material fact as to any of the nine claims he brought forth in the Complaint. Accordingly, the Court **GRANTS** Scripps Motion for Summary Judgment (ECF No. 22) as to each of the Plaintiff's Claims and this Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**.

*This is a Final Order that closes the case.*

**IT IS SO ORDERED.**

Dated: February 6, 2026          s/Brandy R. McMillion
     Detroit, Michigan            HON. BRANDY R. MCMILLION
                       United States District Judge

35